UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 07-18-KSF

DEBRA HUGHES                                                                                           PLAINTIFF

v.                                              **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                              DEFENDANT

\* \* \* \* \* \* \* \* \* \*

The plaintiff, Debra Hughes, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claims for Supplemental Security Income ("SSI") and period of disability and disability insurance benefits ("DIB"). The Court, having reviewed the record, will remand this matter to the Commissioner for further proceedings.

I.      **OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge ("ALJ") must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1)   If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)   If the claimant is not doing substantial gainful activity, her impairment must

1

be severe before she can be found disabled.

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4)     If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5)     Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial

evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.     THE ADMINISTRATIVE DECISION

On August 23, 2004, Hughes filed a Title XVI application for supplemental security income and on September 9, 2004, she filed a Title II application for a period of disability and disability insurance benefits. [TR 269, 41] In both applications, Hughes alleged disability beginning on October 28, 1999. Hughes claims that she is disabled due to a back injury, diabetes, peripheral polyneuropathy, high blood pressure, slow heart beat, and high cholesterol. [TR 52] Hughes' claims were denied initially and upon reconsideration. [TR 36, 30] She filed a timely written request for a hearing before an ALJ, which was conducted on September 21, 2006. [TR 25, 299] The ALJ subsequently issued his decision denying Hughes' application for SSI and DIB benefits on October 6, 2006. [TR 13]

Because Hughes is pursuing a claim for period of disability and disability insurance benefits, she first must satisfy the insured status requirements of sections 216(i) and 223 of the Social Security Act. The ALJ determined that Hughes has acquired sufficient quarters of coverage to remain insured through December 31, 2004. [TR 13] Thus, in order to be entitled to DIB benefits, Hughes must

3

establish disability on or before December 31, 2004.

The ALJ began his analysis at step one by determining that Hughes has not engaged in any substantial gainful activity since her alleged onset date of October 28, 1999. [TR 15] At step two, the ALJ found that Hughes suffers from the following severe impairments: status post right L5-S1 hemilaminectomy and diskectomy on June 20, 2001 and diabetes mellitus. [TR 15] These severe impairments, however, do not meet or medically equal one of the listed impairments in the regulations. [TR 16-17] Rather, the ALJ found that Hughes retains the residual functional capacity to perform a full range of light work activity. [TR17-18] Under the regulations, light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range or light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567.

Because the ALJ found that Hughes' severe impairments do not satisfy any of the listings and she retained the residual functional capacity for light work, the ALJ proceeded to step four of the sequential evaluation analysis and considered whether she was capable of performing her past relevant work as a housekeeper, hospital laborer, delicatessen worker, cook, food preparer, and kitchen supervisor. Considering Hughes' residual functional capacity, the ALJ determined that Hughes could perform her past relevant work as it is actually and generally performed. As a result, the ALJ determined that Hughes was not disabled. [TR 16-20]

The ALJ's decision that Hughes is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on December 15, 2006. [TR 5] This case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**III.   ANALYSIS**

On appeal, Hughes argues that the ALJ's determination was not based on substantial evidence and failed to apply the proper legal standards for several reasons. First, Hughes argues that the ALJ erred at step two of the analysis by failing to include diabetic neuropathy, obesity, and circulation problems in his finding of severe impairments. However, once the ALJ has determined that the claimant has one severe impairment, "the Secretary must continue with the remaining steps in his disability evaluation. . . ." *Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). In other words, once a severe impairment is found at step two, the ALJ is obligated to proceed to step three, and the specific impairments listed in the step two finding are irrelevant.

In this case, the ALJ found two severe impairments - status post right L5-S1 hemilaminectomy and diskectomy and diabetes mellitus - and continued with the remaining steps in his disability determination. [TR 15] Thus, the failure to include diabetic neuropathy, obesity and circulation problems in the list of Hughes' severe impairments at step two does not amount to reversible error. *Id*.

At step three, Hughes argues that the ALJ failed to give appropriate weight to the opinion of Dr. A. Lee Greiner, her treating specialist, that she could only perform sedentary work. As her treating neurosurgeon, Hughes contends that Dr. Greiner's opinion is entitled to the most weight in the record. Hughes also contends that the ALJ failed to consider her diagnosis of "recurrent disk"

5

in arriving at her residual functional analysis. Finally, Hughes argues that the ALJ did not use proper legal standards in assessing her subjective complaints of disabling pain.

The record reflects that Hughes injured her back in October 1999 while working at Pasquale's restaurant. [TR 115, 126, 256] Physical therapy and chiropractic treatment failed to fully resolve her back pain, and she was referred to Dr. Greiner based on an MRI taken in January 2000 which revealed disk protrusion at L5-S1 and a small disk protrusion at L4-L5. [TR 127, 142] Dr. Greiner first examined Hughes in February 2000, and treated her with a series of epidural injections, and her symptoms improved. [TR 186] In May 2000, Dr. Greiner reported that Hughes continued to report problems with her back, and found that she was "temporarily totally disabled from her previous work which involved lifting heavy pans" and suggested that she should consider "job retraining, vocational rehabilitation to a more sedentary job function." Nevertheless, Dr. Greiner recommended a weight reduction program that included aerobic exercise at the YMCA. [TR 185]

By September 2000, Hughes had not required an injection for six months, but her symptoms were beginning to return. [TR 144] Hughes informed another treating physician, Dr. Peter Egan, that Dr. Greiner would not consider surgery without a weight reduction of 50 pounds. [TR 254]

In May 2001, Dr. Greiner scheduled Hughes for surgery. [TR 184] On June 20, 2001, Hughes underwent surgical removal of the herniated disk and right L5-S1 hemilaminotomy and diskectomy. [TR 151-161, 163, 292-93] After surgery, on August 2, 2001, Dr. Greiner released Hughes to return to a limited range of sedentary work (including no frequent bending, stooping or lifting) on September 4, 2001, and to full activities/work on November 5, 2001. [TR 161] Although Dr. Greiner continued to treat Hughes through 2003, the record does not note any further limitations or restrictions after releasing her to return to work in November 2001.

Records after Hughes' surgery also support the ALJ's findings with respect to her residual functional capacity. She was able to walk on a treadmill as early as February 2002, but discontinued this after being diagnosed with Type II diabetes and resulting problems with her foot, which eventually improved. [TR 205-51] Hughes' diabetes was treated conservatively with diet and exercise and has remained stable. [TR 246-50] The record also reflects that Hughes' hypertension and asthmatic bronchitis has been controlled and does not result in any work limitations. [TR 257, 235-41]

A lumbar myelogram in June 2002 revealed a recurrent disk problem. [TR 194-95] However, when Dr. Greiner examined Hughes in December 2002, he found that her radiculopathy had subsided and that further surgery was not recommended. He did not identify any additional functional imitations or restrictions relating to her recurrent disk problem. In fact, Dr. Greiner again recommended that Hughes enroll at the YMCA for physical conditioning, weight reduction, and spine strengthening exercises. [TR 183]

Although Hughes argues that the ALJ failed to consider her recurrent disk problem, the ALJ specifically discussed this impairment, noting that the injury resulted from a fall at home, and that a re-review of the musculoskeletal listings does not show that she meets or equals a listing. Furthermore, the record simply does not contain any evidence that the recurrent disk problem results in limitations beyond those already found by the ALJ based on her other impairments.

In addition to Dr. Greiner's record, the ALJ also considered, *inter alia*, the report of Dr. Keller Reide, a consultative physician who examined Hughes on May 17, 2004. Dr. Reide opined that Hughes could squat, bend, stoop and reach adequately, had normal muscle strength, and no significant limitations in range of motion in any area. [Tr 200-04] He opined that Hughes' back

condition would have a minimal effect on her ability to perform activities of daily living and a moderate effect on her ability to perform work related activities. [TR 203]

Hughes' own reports related to her activities of daily living were also considered by the ALJ. Hughes reported that she continues to cook, keep house while her husband works, do the laundry, occasionally shop and visit family. [TR324-26] While she contends that prolonged sitting causes pain, the ALJ noted that she sat comfortably during the hearing. [TR 19] The ALJ also considered the fact that the only medicine prescribed for her pain - Naprosyn - is not typically prescribed for those with severe pain. [TR 19]

The record clearly contains substantial evidence in support of the ALJ's finding that Hughes retains the residual functional capacity to perform light work. This finding is consistent with the records of Dr. Greiner, and confirmed by Dr. Reide's examination. It is also consistent with her own testimony regarding her activities of daily living. There is simply no requirement that the ALJ accept Dr. Greiner's pre-surgery "temporary" limitation in light of her post-surgery improvement and Dr. Greiner's subsequent opinion that Hughes could resume full activities/work on November 5, 2001. [TR 161]

Furthermore, the ALJ's opinion also properly evaluates Hughes' subjective complaints of pain. When evaluating subjective allegations of pain, the Sixth Circuit has held that the claimant must show the following:

> evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). A claimant's

subjective statements about symptoms alone will not establish disability. *See* 20 C.F.R. § 416.929(a)(2007). Rather, medical signs and laboratory findings must be present that show a medical impairment(s) that could reasonably be expected to produce the symptoms alleged. The intensity, persistence and limiting effects of the symptoms will be evaluated based on all the evidence. 20 C.F.R. § 416.929(c)(2007).

Reviewing the record, the ALJ determined that although Hughes' medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements with respect to the intensity, persistence and limiting effects of the symptoms were not entirely credible. [TR 19] As the ALJ pointed out, the medical evidence simply fails to document a continuing impairment of incapacitating proportions. Moreover, in rejecting Hughes' subjective complaints, the ALJ considered the fact that Hughes is able to drive, grocery shop and do light housework. [TR 19-20] The daily activities of the claimant are a proper factor for the ALJ to consider in making a decision on credibility. 20 C.F.R. § 929(c)(3); *see Walters v. Commissioner*, 127 F.3d 525, 532 (6th Cir. 1997)(the ALJ can "consider household and social activities engaged in by the claimant in evaluating a claimant's assertion of pain or ailments"). The ALJ's opinion reflects the fact that Hughes' subjective complaints of disabling impairments were thoroughly considered, but rejected based on the record as a whole.

For these reasons, the ALJ's decision at step three of the sequential evaluation analysis that Hughes is capable of performing light work was decided by proper legal standards and is supported by substantial evidence. The Court will now turn to Hughes' argument with regard to the ALJ's finding at step four that she could return to her past relevant work.

Hughes argues that the ALJ erred by finding that her past relevant work included positions

other than her job as a cook at Pasquale's restaurant from 1996 until 1999. According to Hughes, based on her earnings, the other positions do not qualify as past relevant work under 20 C.F.R. 404.1574(a). Since the ALJ determined that she could only do light work, and the work at Pasquale's restaurant was medium work, Hughes contends that the ALJ erred in determining that she could return to her past relevant work.

The Commissioner concedes that the record is unclear as to whether any of Hughes' past work, other than her work at Pasquale's restaurant, was performed at a substantial gainful activity level as required by the regulations. Moreover, the Commissioner concedes that Hughes' work at Pasquale's restaurant reflects medium exertional demands. Nevertheless, the ALJ found that Hughes could return to her past work, and did not proceed to step five of the sequential evaluation analysis. The Commissioner, however, contends that this is a harmless error. This Court disagrees.

Reviewing the record and considering the Commissioner's concessions with regard to Hughes' past work, the administrative record does not contain substantial evidence that Hughes can return to her "past relevant work." Thus, the ALJ erred in concluding his analysis at step four of the sequential evaluation analysis. The scope of judicial review stops here. The Court simply does not have the authority to step into the shoes of the ALJ and make a step five determination. *See Williams v. Apfel*, 204 F.3d 48, 50 (2nd Cir. 1999)(holding that remand was "the appropriate remedy when an erroneous step four determination has precluded any analysis under step five"). Accordingly, this matter will be remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for a step five determination of whether other work exists in the national economy that accommodates Hughes' residual functional capacity and vocational factors.

IV.   **CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby ORDERS:

(1)   the plaintiff's motion for leave to file a reply brief [DE #8] is GRANTED;

(2)   the plaintiff's motion for summary judgment [DE # 5] is GRANTED IN PART to the extent that this matter is remanded to the Commissioner for further proceedings and DENIED IN PART to the extent that plaintiff seeks an award of benefits;

(3)   the Commissioner's motion for summary judgment [DE # 6] is DENIED;

(4)   the decision of the Commissioner is REVERSED, and this matter is REMANDED to the Commissioner for further proceedings consistent with this Opinion & Order; and

(5)   a judgment will be entered contemporaneously with this Opinion & Order.

This October 18, 2007.

Signed By:

*Karl S. Forester* KSF

United States Senior Judge